(133 App. Div. 592.)

### PRAGER v. BEARDSLEY.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. JUDGMENT (§ 139*)—DEFAULT—VACATION—DISCRETION OF COURT.

Under Code Civ. Proc. § 724, providing that a default may be excused when the judgment is taken by mistake, inadvertence, surprise, or excusable neglect, the trial court does not have unlimited discretion to excuse defaults.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 265–268; Dec. Dig. § 139.*]

2. JUDGMENT (§ 147*)—DEFAULT—VACATION.

Where plaintiff absolutely refused, without excuse, to appear for trial because he preferred to have his default taken and then attempt to have it excused, it was error to vacate the default; Code Civ. Proc. § 724, providing that a default may be excused when the judgment is taken by mistake, inadvertence, surprise, or excusable neglect.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 257; Dec. Dig. § 147.*]

Appeal from Special Term, New York County.

Action by Henry L. Prager against Hulbert T. E. Beardsley. Appeal by defendant from an order granting a motion to vacate a judgment and for a new trial. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

John Ewen, for appellant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McLAUGHLIN, J.  Action to recover damages for an alleged slander.  The complaint was dismissed at the trial on the plaintiff's failure to appear.  Plaintiff failed to appear on the day fixed for trial because he was informed, according to his affidavit, by his counsel, that it would not be necessary for him to do so, and that an adjournment would be had owing to the sickness of counsel.

The case appeared on the call calendar March 19th and was set for trial on the 26th of that month.  The day when the case first appeared on the day calendar, April 8th, and was called, the plaintiff, through his attorney, Mr. Seasongood, answered, "Ready," and the plaintiff was informed of that fact, in response to which he said he had been endeavoring to retain counsel to try the case, but had been unable to do so, and he instructed Mr. Seasongood if the case were sent out for trial to go ahead and try it.  The case was again called at 2 o'clock in the afternoon of April 8th, and was then passed until Monday, April 12th.  Seasongood again communicated with the plaintiff, advising him of the situation, in response to which the plaintiff said "that he had not yet secured counsel, and that if reached" Seasongood "should try the case," and the case was held subject to engagement of defendant's counsel.  Seasongood, however, insisted that the action be set down for trial, urging, among other reasons, that he was obliged to go to Baltimore on the evening of that day, and if the case were not sent out at once for trial he might not be in a position to conclude the trial that day.  Shortly thereafter the justice having charge of the call calendar announced that there would be no further call of the calendar until 2 o'clock in the afternoon, and Seasongood then applied to the court to have the case postponed until the 15th in order to enable him to return from Baltimore, at the same time saying he was personally to try the action, and no suggestion was made then, or in fact at any other time, that any other counsel had been engaged.

From the moving papers, however, it does appear that on the 14th of April an effort was made by the plaintiff to retain Mr. Palmer.  Mr. Palmer, being sick at the time, was unable to go ahead and try the case, but said he thought he "might be able to do so the following Monday."  On the following morning, April 15th, plaintiff and his attorney had a conversation, in which the plaintiff advised the attorney that he had retained Mr. Palmer to try the case, but again asked Mr. Seasongood to attend on the call of the calendar, stating that Mr. Palmer's representative would also be there with an affidavit as to Mr. Palmer's illness.  Seasongood told the plaintiff that the case was about to be reached and the plaintiff had better be in court, to which the plaintiff replied "that he had an important engagement and did not think it was necessary for him to be there."  The case was called on the 15th, and the defendant was present with his witnesses.  Seasongood was present in court and applied for an adjournment, stating that Mr. Palmer had been retained to try the case and was ill; but the learned justice having charge of the calendar, in view of the previous adjournments obtained at the request or on motion of the plaintiff, denied the application and sent the case out for trial in part 9.  Mr. Seasongood at once notified both his own office

and the plaintiff that the case had been sent out for trial, and that the plaintiff had better attend at once. Owing to the fact that there was an unfinished case on trial before the justice in part 9, some little time elapsed before the case was reached. When it was reached, Mr. Seasongood again applied for an adjournment on the grounds theretofore stated, which application was denied. He then stated that he had but one witness in court, and that he might not be able to procure the presence of the plaintiff until 2 o'clock that day, and asked that, in the event that the impaneling of the jury and the examination of the witness should not occupy the full morning session the case be adjourned until that time. The learned justice said he would proceed with the case and would determine what to do when the situation presented itself. A jury was chosen, Seasongood proceeded and completed his opening, and then he or his representative informed the plaintiff by telephone that he must attend at once, that it was impossible to adjourn the case any longer, and that he must be ready at 2 o'clock in the afternoon, to which the plaintiff responded:

"Absolutely nothing doing. That case must not go on. I will not come down to court to-day. I would prefer that the case be dismissed, in which event I can have it reopened."

Seasongood thereupon advised the trial justice of the situation and asked leave to withdraw a juror. This was denied, and the complaint was dismissed upon plaintiff's failure to proceed. Upon the motion the foregoing facts appear, and I think the court erred in vacating the judgment and directing that the case be restored to the calendar for trial. The case had been regularly noticed for trial, and the trial actually entered upon, and no good reason appears or is suggested why the plaintiff did not proceed, except for his own convenience.

The court, while having discretion to excuse defaults, does not have unlimited discretion. The Code of Civil Procedure (section 724) states when a default may be excused. It is when the judgment is taken by "mistake, inadvertence, surprise or excusable neglect." The judgment in this action was not taken by mistake, inadvertence, surprise, or excusable neglect. It was taken because the plaintiff absolutely refused without excuse to appear, and because he preferred to have his default taken and then speculate on what the court might do when he applied to have such default excused. Parties cannot trifle with the court in this way. If they choose to do so, they must abide by the consequences.

I think the order should be reversed, with $10 costs and disbursements, and the motion to excuse the default denied, with $10 costs. All concur.